**Michael N. KLEINBART, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11541.**

District of Columbia Court of Appeals.

Argued May 3, 1978.

Decided June 13, 1978.

Nicholas D. Dale, Washington, D. C., for appellant.

Michael L. Lehr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and GALLAGHER, Associate Judges.

NEWMAN, Chief Judge:

After a bifurcated jury trial, appellant was convicted of carrying a pistol without a license. Based on written assertions by the United States that he had been previously convicted of a felony, an enhanced sentence of from three to ten years' confinement was imposed for what was otherwise a misdemeanor.[1] He raises three issues on appeal: (1) denial of his right guaranteed by the Sixth Amendment to a public trial; (2) an alleged abuse of discretion by the trial court's refusal to impanel a second jury for the insanity phase of the bifurcated trial and thereafter by its refusal to allow a second voir dire of the first-phase jurors prior to commencing the insanity phase of the trial; and (3) procedural errors in sentencing to an enhanced sentence under D.C. Code 1973, § 22–3204, by failure to comply strictly with § 23–111 of the Code. Finding that appellant's constitutional right to a public trial was violated, we reverse.[2]

I

Appellant's trial commenced with a voir dire of the jury on January 26 and 27, 1976; testimony was received from January 27 to 30 and on February 3. The jury deliberated on February 4 and 5, returning its verdict on the latter date. On January 29, during the first phase of appellant's trial, the courtroom was locked upon order of the trial court without notice to the parties or counsel. Upon learning that the courtroom

1. D.C. Code 1973, § 22–3204.

2. While our disposition of the case on this ground makes it unnecessary to decide appellant's other two claims of error, we think it appropriate to comment briefly on them in the event they arise upon a retrial.

Refusal to permit a voir dire before the second phase of a bifurcated trial—thereby compelling any voir dire on the insanity defense to be conducted prior to the first-phase trial—would appear to negate the very reason for granting a bifurcated trial.

On the sentencing issue, we would call the trial court's attention to such decisions of this court as *Irby v. United States,* D.C.App., 342 A.2d 33, 41 (1975); *Savage v. United States,* D.C.App., 313 A.2d 880, 882 (1974); *Bond v. United States,* D.C.App., 310 A.2d 221 (1973); and *Smith v. United States,* D.C.App., 304 A.2d 28, *cert. denied,* 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973). In all these cases, we have made clear that *strict compliance* with D.C. Code 1973, § 23–111 is required before enhanced penalties may be imposed.

was locked, counsel for appellant noted a timely objection thereto. The only evidence of and explanation for this action appears in the record of the following colloquy among defense and prosecution counsel and the court:

[DEFENSE COUNSEL]: There is one other matter, Your Honor. The courtroom is apparently locked.

THE COURT: It surely is.

[DEFENSE COUNSEL]: Your Honor, I am not aware of why this is, and the reason I bring it to the Court's attention is that with the courtroom locked there are absolutely no spectators in the courtroom.

THE COURT: Absolutely.

[DEFENSE COUNSEL]: And the jury is in a situation where they see there are absolutely no spectators in the courtroom, although there were on the first day; there were several. And I think it is clearly prejudicial to Mr. Klienbart [sic] for that jury to speculate.

THE COURT: How is that prejudicial to Mr. Klienbart?

[DEFENSE COUNSEL]: They will speculate as to why the courtroom is suddenly vacated, there is no one in the courtroom during this trial. I don't know what the basis of it is and I have to raise it on his behalf, an objection to having a closed trial. The Sixth Amendment—

THE COURT: He is not having a closed trial. Is there anybody he wants in here?

[DEFENSE COUNSEL]: Well, Your Honor, as far as anybody, I don't think there is anybody he wants in here, but I would like to have just some of the normal courtroom sitters, if I can phrase it that way, simply because it will be some people in the audience, and the jury can see there are people who can come into the courtroom. They are quite clearly going to draw an inference now that for some reason this matter has been closed off.

THE COURT: I don't—Mr. . . . , you can think what you want. But there is absolutely no prejudice. Who is to say that there is anybody out there who wants to come into the courtroom? Are you able to say that?

[DEFENSE COUNSEL]: On the basis of the fact there were 10 or 15 people here the first day, I would assume there are, Your Honor.

THE COURT: There were a bunch of students in here.

[DEFENSE COUNSEL]: There may be a bunch of students today.

THE COURT: There may be, but they haven't been in here as yet this morning.

[THE PROSECUTOR]: Your Honor, I am not going to take any position on this thing, but I would say there were several persons that asked me yesterday, the normal people that, I guess you call them hangers-on, that they come and asked why the courtroom was locked, and I said I didn't know; and I don't know.

I understand—I hear that there was some kind of a bomb threat yesterday or something. I don't know whether that is related to it. I don't know. That is not Government counsel's request.

THE COURT: I know it wasn't at your request.

[THE PROSECUTOR]: Yes, ma'am.

[DEFENSE COUNSEL]: Well, Your Honor, I must stress that under the Sixth Amendment, the defendant in a criminal case does have a right to a public trial.

THE COURT: He most assuredly does.

[DEFENSE COUNSEL]: I can't say—we can't say it is a public trial if the courtroom doors are locked and no one is permitted to enter.

THE COURT: That's right.

[DEFENSE COUNSEL]: It is not that we have a special interest in having anyone particular in the courtroom, but we think the courtroom, under that amendment, and under general principles, is a fair trial and due process should be open, at least so the jury doesn't draw some kind of inference that there is a special security problem in this case, of which I am not aware, Your Honor.

THE COURT: Who is to say there is a special security problem simply because there is no one in here?

[DEFENSE COUNSEL]: Because the door is locked.

THE COURT: The door wasn't locked yesterday. I locked the door this morning.

[DEFENSE COUNSEL]: May I inquire of Your Honor why the door is locked then?

THE COURT: I locked the door this morning because I didn't want it open.

Is the door locked now?

THE DEPUTY MARSHAL: I don't know, Your Honor.

THE COURT: Is it locked now?

[DEFENSE COUNSEL]: It was this morning.

THE COURT: As I said, I know I locked it this morning, but it wasn't locked at all yesterday.

(Pause while the Court confers with the United States Marshal.)

[DEFENSE COUNSEL]: I know that individuals were excluded from the courtroom yesterday, Your Honor. I don't know; I heard that from the Marshals. I just must, you know, raise an objection to the proceedings proceeding in that fashion.

THE COURT: You can raise your objection, sir.

[DEFENSE COUNSEL]: If there is any alternative, Your Honor, if there is a security problem and it can be handled by having Marshals outside the door screening people as they come in, I wouldn't object to that.

THE COURT: Mr. . . . . , I said your objection is on the record.

[DEFENSE COUNSEL]: Very well, Your Honor.

Some fifty minutes later, a spectator was addressed by the trial judge, from which it is evident that by that time the courtroom doors were open. Thus we can conclude that the courtroom was locked during approximately one hour *for no articulated reason.*[3]

## II

■ The Sixth Amendment guarantees to appellant a public trial.[4] That amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This right to a public trial has never been definitively construed by the Supreme Court. *But see Estes v. Texas,* 381 U.S. 532, 560, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Warren, C. J., Douglas & Goldberg, JJ., concurring); *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960).

■ The common law right to a public trial was expressly incorporated in the Constitution because of the "Anglo-American distrust for secret trials," *In re Oliver,* 333 U.S. 257, 268, 68 S.Ct. 499, 505, 92 L.Ed. 682 (1948), symbolized by institutions such as the Court of Star Chamber which our ancestors perceived as a menace to liberty. *Id.* at 269, 68 S.Ct. at 505. The guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. *Id.* at 270, 68 S.Ct. 499. Thus a "public trial" serves as a restraint on the possible abuse of judicial power and "guarantee[s] that the accused is fairly dealt with and not unjustly condemned." *Estes v. Texas, supra,* 381 at 538–39, 85 S.Ct. 1631; *United States v. Kobli,* 172 F.2d 919, 921 (3d Cir. 1949). Other benefits recognized as accruing from this guarantee are that the quality of testimony is improved; unknown witnesses are induced to come forward with relevant testimony; all participants are moved to per-

---

**3.** There was some indication—controverted by the trial court—that the courtroom may have been locked on the previous day as well. See transcript quoted *supra,* at 880–881.

**4.** *See generally* Note, *The Right to·a Public Trial in Criminal Cases,* 41 N.Y.U.L.Rev. 1138 (1966); Annot., 4 L.Ed.2d 2128 (1960); Annot., 48 A.L.R.2d 1436 (1956); Note 49 Colum.L.Rev.

110 (1949). This right applies to the entire trial, including that portion devoted to jury selection, *United States v. Sorrentino,* 175 F.2d 721 (3d Cir.), *cert. denied,* 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949), and suppression hearings, *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 603 (3d Cir. 1969).

form their duties conscientiously; and the public is given the opportunity to observe the courts in the performance of their duties and to determine whether that performance is adequate. *Estes v. Texas, supra,* 381 U.S. at 583, 85 S.Ct. 1628 (Warren, C. J., Douglas & Goldberg, JJ., concurring). "The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant." *Lewis v. Peyton,* 352 F.2d 791, 792 (4th Cir. 1965).

■ The right to a public trial is not absolute. However, the qualifications on the breadth of the right are few and are based upon considerations of preserving order, protecting the parties or witnesses, and maintaining confidentiality. *United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272, 1274 (2d Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975); *United States v. Eisner,* 533 F.2d 987, 993 (6th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Davis v. United States,* 247 F. 394, 396 (8th Cir. 1917). In implementing these limitations on the otherwise broad right to a public trial, courts must always remain sensitive to the fact that "[i]t is only under the most exceptional circumstances that limited portions of a criminal trial may be even partially closed." *Stamicarbon, N.V. v. American Cyanamid Co.,* 506 F.2d 532, 542 (2d Cir. 1974). In evaluating the need for such an exceptional course of action, courts must constantly recognize that "any claim of practical justification for a departure from the constitutional requirement for a public trial must be tested by a standard of strict and inescapable necessity." *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 607 (3d Cir. 1969). Circumstances which have been held to meet this standard of strict and inescapable necessity, thereby justifying exclusion of some or all of the public from limited portions of trial proceedings, are for example: receiving evidence of trade secrets, *Stamicarbon N.V. v. American Cyanamid Co., supra;* receiving testimony of an undercover agent still engaged in undercover work, *United States ex rel. Lloyd v. Vincent, supra;* and protecting the security of a witness, *United States v. Eisner, supra.*

■ Where the trial court has improperly excluded the public or a portion thereof from the courtroom during a criminal trial, and the accused has made timely objection to such exclusion, prejudice will be presumed without placing the burden upon the accused to show actual harm to justify reversal. *United States v. Kobli, supra; Tanksley v. United States,* 145 F.2d 58, 10 Alaska 443 (9th Cir. 1944); *Davis v. United States, supra; State v. Haskins,* 38 N.J.Super. 250, 118 A.2d 707 (1955); *People v. Jelke,* 308 N.Y. 56, 123 N.E.2d 769 (1954); *People v. Byrnes,* 84 Cal.App.2d 72, 190 P.2d 290, *cert. denied,* 335 U.S. 847, 69 S.Ct. 60, 93 L.Ed. 397 (1948); *Neal v. State,* 86 Okl.Cr. 283, 192 P.2d 294 (1948). A requirement that the defendant show actual prejudice would in most cases deprive a defendant of the guarantee, for it would be difficult to envisage a case in which he would have evidence available to demonstrate specific prejudice. *United States ex rel. Bennett v. Rundle, supra* at 608. "[A] violation of the constitutional right necessarily implies prejudice and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard." *Davis v. United States, supra* at 398–99.

Since an affirmative showing of prejudice is not necessary, any deprivation of the constitutional right is per se reversible. A defendant's constitutional right to a public trial has been held to be violated and a per se reversal rule applied in cases where the court *sua sponte* ordered the public excluded to prevent embarrassment of a rape case prosecutrix, *Tanksley v. United States, supra* ; where the exclusionary order of the court cleared the courtroom during jury selection (one day) even though the order was relaxed on the last three days of trial, *United States v. Kobli, supra; cf. United*

*States v. Sorrentino,* 175 F.2d 721 (3d Cir.), *cert. denied,* 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949) (but defendant held to have validly waived the right by declining to object); where the court ordered exclusion of all persons except defendant, attorneys, and witnesses during hearing of a motion to suppress a confession, *United States ex rel. Bennett v. Rundle, supra.* In our view, this approach to vindicating the constitutional right to a public trial is the appropriate one.[5]

■ In summary, we hold that it is only under the most exceptional circumstances that limited portions of a criminal trial may be closed even partially to the public. When the trial court believes such exceptional circumstances exist, counsel must be so informed on the record and they must be heard on the question. After so proceeding, the trial court may close limited portions of a trial upon proper determination of the strict and inescapable necessity for such a course of action. The closing of a trial to the public, without such a finding, is per se reversible.

### III

■ Applying this standard to the case *sub judice* mandates reversal. The trial court, without notice to counsel and thus without affording them an opportunity to be heard, closed appellant's trial to all the public for a portion of at least one day. When confronted with objection by appellant's counsel on Sixth Amendment grounds, the trial court refused to articulate reasons for taking this course of action although requested to do so. Substantially more is constitutionally mandated as we have set forth in Section II above.

*Reversed.*

---

5. While we recognize that some courts have adopted a less rigorous approach to the public trial question, we are unpersuaded by their reasoning. Focusing on the historical background of the public trial guarantee as a prophylactic for abuse of judicial process, and ignoring the other benefits stemming therefrom, these courts have held that a public trial is one that is not *secret,* rather than one open to the public. This less vigorous interpretation of the public trial guarantee considers the condition satisfied as long as a "reasonable proportion of the public is suffered to attend" because the presence of even limited classes of people will insure a fair trial for the accused. Often these decisions are influenced by factual considerations such as the particular circumstances in which the order was issued, its duration, the precise extent to which the public is excluded, and the fact that a state constitutional right and not the Sixth Amendment is involved. *E. g., Aaron v. Capps,* 507 F.2d 685 (5th Cir.), *cert. denied,* 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed. 112 (1975) (habeas corpus petition claiming denial of public trial where state constitution permitted certain persons to be excluded from the trial of a rape case); *Snyder v. Coiner,* 510 F.2d 224 (4th Cir. 1975) (habeas corpus petition claiming constitutional deprivation where bailiff refused to allow persons to enter or leave courtroom briefly during closing arguments); *Norwood v. State,* 258 So.2d 756, 763 (Miss. 1972) (state court held where trial judge unaware doors locked and some people still remained in courtroom, no constitutional violation existed). Contrary to our facts, in none of these cases were all members of the public excluded from any meaningful segment of the trial proceedings.