UNITED STATES

v.

**Sergeant Robert J. MERCIER, FR 030–46–7440, United States Air Force.**

**ACM 22349.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 25 Oct. 1977.

Decided 25 Aug. 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr. and Lt. Colonel Michael Levant, USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

HERMAN, Judge:

Tried by general court-martial consisting of members, the accused was convicted of conspiracy to possess and introduce marihuana and amphetamine onto a military installation, and possession, transfer and sale of methamphetamine, in violation of Articles 81 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892.

Trial and appellate defense counsel have asserted numerous assignments of errors; we find merit in three.[1]

We hold that a copy of an Article 15 punishment not required to be kept on file by regulation cannot be authenticated by the custodian of records of that office. We also decide that when a military judge di-

1. Errors assigned but not discussed have either been rendered moot by our decision or are without merit.

rects that a requested defense witness be secured, and the record fails to explain his subsequent absence, prejudicial error is committed. The judge was also remiss in not instructing court members that four offenses were to be considered as two, although he had correctly calculated the maximum punishment due to multiplicity. Other assignments, worthy of discussion but not resulting in error, relate to the timeliness of defense counsel's response to the post trial review of the staff judge advocate and the exclusion of spectators from the courtroom while a hearing without court members was being conducted under Article 39(a), Code, *supra*.

## I

One of the overriding issues asserted by appellate counsel is that the accused failed to receive a public trial. *United States v. Grunden*, 2 M.J. 116 (C.M.A. 1977). The trial took over three days, but only the first, 25 October 1977, is questioned. This day was consumed entirely with Article 39(a), Code, *supra*, sessions, where court members were properly absent. The record of trial indicates that the court convened at 1317 hours; at 1358 the court recessed, reconvening at 1404. At a time close to the next recess (which occurred at 1444), the record indicates that an unidentified officer[2] started to enter the courtroom, and the military judge responded,

> Bailiff, you'll find a sign that says, "Court in session. Do not enter," or something on the back of the door. Put up the one that says don't come in here. *You can let in anyone but court members.*

The italicized portion of the quotation was added by the military judge to correct the record. The court reporter, in a post-trial affidavit, confirms that this was the *gist* of what was said by the judge. She admits to taking poor notes during that portion of the trial due to distractions, and that she depended upon a tape recording

used to back up her notes. Upon closer checking of the tape recording, she attests that the italicized portion above should read,

> You can check with anybody that's not a court member coming in; it's limited to court members sticking their heads in, if they're showing up now.

In his post-trial affidavit, the bailiff states that he "may have drawn the conclusion that the session was closed to all spectators." Other affidavits are clear that no other spectators were permitted entry for the remaining portion of that day's Article 39(a) session,[3] which ended at 1709 hours.

The right to a public trial is one of our fundamental democratic guarantees. United States Constitution, Sixth Amendment; see *Re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) for an excellent exposition of the development of the right to a public trial. Until recently, courts-martial were not considered to come within the constitutional requirement. *Re Oliver, supra*, at p. 266 n.12, 68 S.Ct. 499, citing *Ex parte Quirin*, 317 U.S. 1, 40, 63 S.Ct. 2, 87 L.Ed. 3 (1942); *United States v. Brown*, 7 U.S.C. M.A. 251, 22 C.M.R. 41 (1956). However, the majority of the United States Court of Military Appeals in the case of *United States v. Grunden, supra* at 120, n.3, held:

> This Court is in full agreement with the concurrence of then Chief Judge Quinn that the right to a public trial is indeed required in a court-martial. To the extent that *United States v. Brown*, 7 U.S. C.M.A. 251, 22 C.M.R. 41 (1956), implies a "military exception" to the right to a public trial for service personnel in reliance upon *Ex parte Quirin*, . . . it is overruled.

■ There can be no doubt that the right to a public trial in courts-martial is, because of the *Grunden* decision, as full and complete as in civilian courts. However, the right to a public trial is not unlimited. See

---

**2.** Affidavits of trial participants show that this was a prospective witness, the Deputy Base Commander, Lt. Colonel Harold T. Boe.

**3.** There was no showing that anyone sought entry to view the trial and Lt. Colonel Boe, in his affidavit, states one spectator was in the courtroom when he testified later that day.

*United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir. 1975); annot., 4 L.Ed.2d 2128 (1960).

In the present case, it is evident that the trial judge had no intention of excluding the general populace from the courtroom, but rather only court members who attempted to enter the Article 39(a) session believing the court to be in open session. That there was no objection by defense counsel to the judge's instructions is an indication that the exclusion was not to pertain to the general public, despite the bailiff's misunderstanding. In addition, the presence of one spectator attested to in a post trial affidavit lends further credence to the inadvertent exclusion of others.

The exclusion of potential spectators from an Article 39(a) session of a general court-martial for a period of almost two and a quarter hours when testimony concerning the validity of a search was being heard must be weighed against our finding that it was not intended by the trial judge. For this evaluation, the purpose of the Sixth Amendment guarantee of a public trial must be considered; a recent decision of the District of Columbia Court of Appeals concisely developed this part of our history:

The common law right to a public trial was expressly incorporated in the Constitution because of the "Anglo-American distrust for secret trials," symbolized by institutions such as the Court of Star Chamber which our ancestors perceived as a menace to liberty. The guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. Thus a "public trial" serves as a restraint on the possible abuse of judicial power and "guarantee[s] that the accused is fairly dealt with and not unjustly condemned. Other benefits recognized as accruing from this guarantee are that the quality of testimony is improved; unknown witnesses are induced to come forward with relevant testimony; all participants are moved to perform their duties conscientiously; and the public is given the opportunity to observe the courts in the performance of their duties and to determine whether that performance is adequate. (Citations omitted.)

*Kleinbart v. United States*, 388 A.2d 878 (D.C.App.1978), 23 Crim.L.Rep. 2326 (BNA).

■ In this perspective, we hold that the exclusion of potential spectators for a relatively short period of time resulting from a misinterpretation of the trial judge's instructions when court members were properly excluded, is not a violation of the public trial guarantee enunciated in *United States v. Grunden, supra.* The presence of counsel and a verbatim transcript further insure that the Article 39(a) session was properly conducted. While we must caution trial judges to avoid misunderstandings of this nature by careful instructions to bailiffs, where employed, we find no prejudice to the substantial rights of the accused in these circumstances.[4]

## II

Appellate defense counsel next assert that a record of nonjudicial punishment of the accused under Article 15, Code, *supra,* was improperly admitted into evidence. We agree. When the exhibit was offered, trial defense counsel objected to it as not being properly authenticated. The government then produced the custodian of records in the base legal office, who testified that his office kept file copies of Article 15 proceedings, and that the exhibit had come from those files. He cited Air Force Regulation 111–9 as requiring him to keep such records. Our examination of that regulation reveals no requirement for a base legal office to retain copies of Article 15 correspondence.

■ A record of non-judicial punishment is admissible in the presentencing portion of

4. We are aware that deprivation of a public trial is reversible error *per se,* regardless of prejudice. *United States ex rel Bennett v. Rundle,* 419 F.2d 599 (3d Cir. 1969); *United States v. Kobli,* 172 F.2d 919 (3d Cir. 1949); *Tanksley v. United States,* 145 F.2d 58, 10 Alaska 443 (9th Cir. 1944). Our finding is that there was no such deprivation in this case.

a court-martial if it relates to previous offenses committed, generally speaking, within six years of any offense of which the accused is convicted at the trial. Air Force Manual 111–1, 2 July 1973. Documents showing such punishment are admissible as personnel records, *United States v. Mulheron*, 46 C.M.R. 354 (N.C.M.R. 1971), and are subject to the rules governing the admissibility of official records. Manual for Courts-Martial, 1969 (Rev.), paragraphs 75*d*, ·144*b*.

In *United States v. Wilson*, 45 C.M.R. 444 (A.F.C.M.R. 1972), then Senior Judge LeTarte wrote for this Court, .

The exact question before us, therefore, is whether the document in issue, having been obtained from a file not considered part of the accused's personnel records, was admissible. We agree with appellate Government counsel that it was.

Under paragraph 75*d* of the Manual for Courts-Martial, not only the original personnel records but also "copies or summaries thereof" are admissible in evidence subject, of course, to the same limitations that apply to the originals. Accordingly, Prosecution Exhibit 3, *as a properly authenticated copy of an admissible original,* was itself admissible; and it matters not that the file from which this exhibit was obtained is not considered a personnel record as defined in the Manual for Courts-Martial. (Emphasis supplied)

■ In that case, the document was obtained from the accused's unfavorable information file; at that time such file was not considered a part of an Air Force member's personnel records [5] but was maintained under Air Force Regulation 35–32. The essential distinction between the *Wilson* case and the one before us is that the Article 15 file maintained at the legal office

was not sanctioned by any regulation or directive. Therefore, there was no official custodian for the simple reason that the files were not official; such records cannot be authenticated by their "custodian."

Although we do not pass judgment on management practices which maintain records not required by regulation, we will not sanction such procedures judicially. That the accused's base personnel records were enroute to a new assignment does not justify an exception to this rule, since proper planning by trial counsel could have insured the availability for trial of a properly authenticated copy of pertinent personnel records.[6]

■ Our finding that Prosecution Exhibit 11 was improperly admitted into evidence requires assessment of its effect upon the sentence. Using the criteria enunciated in *United States v. Scott*, 21 U.S.C.M.A. 154, 44 C.M.R. 208 (1972), (and since the Article 15 in question involved similar misconduct, use of marihuana, occurring a year before these charges), we find a fair risk of prejudice that the sentence was affected, and we will therefore reassess.

### III

In Specification 5 of Charge II, the accused was convicted of possession of 70 grams of methamphetamine, found in a search of an Airman Kalscheuer's residence. An informant had advised investigatory personnel that the accused told him Kalscheuer was keeping 180 grams of "speed" belonging to the accused at that residence; this information was used as the basis for a search. In his testimony, the accused denied both the conversation with the informant and that Kalscheuer was holding "speed" for him.

■ Early in the trial, and before members had been assembled, defense coun-

5. This rule has been changed, and the unfavorable information file is now considered to be a personnel record. Air Force Manual 111–1, paragraph 5–13 (2 July 1973); *United States v. Newbill*, 4 M.J. 541, 542, n.4 (A.F.C.M.R. 1977).

6. We have considered and reject the rationale of our sister Army Court expressed in *United States v. Lewis*, 37 C.M.R. 619 (A.B.R. 1967), cited in *United States v. Molina*, 47 C.M.R. 752 (A.C.M.R. 1973), as the practice is subject to abuses.

sel requested the presence of Airman Kalscheuer as a witness, since defense motions for suppression of evidence of the search had been denied. Trial counsel was directed by the judge to secure the witness, who was assigned to the base. His testimony, according to trial defense counsel, would have been that none of the amphetamines found in his apartment belonged to the accused. If believed, this would have been a complete defense to Specification 5. Trial counsel made attempts to locate this witness, who had advised his duty section that he would be attending the trial, and continued attempts were apparently being made by his squadron to find him. Kalscheuer did not testify; nothing appears in the record to explain his absence; the military judge did not change his ruling that trial counsel was to secure his presence. Further, the record does not reveal a waiver of his presence by the defense.[7]

> [W]e hold that if the testimony of a given witness is material, the live presence of that witness must be furnished or the proceedings abated, unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative to the testimony of other defense witnesses. (Citations omitted)

*United States v. Williams*, 3 M.J. 239 (C.M.A. 1977). See also *United States v. Arias*, 3 M.J. 436 (C.M.A. 1977); *United States v. Jouan*, 3 M.J. 136 (C.M.A. 1977); *United States v. Powell*, 4 M.J. 551 (A.F.C. M.R. 1977). In the present case, the testimony of Kalscheuer, if he testified as expected, would have corroborated the accused's denial of ownership and possession; such testimony could hardly be termed "cumulative." Since the trial judge directed that the witness be produced, it is puzzling that no explanation appears in the record concerning his absence for the remainder of the trial. In this state of circumstances we find prejudice to the substantial rights of the accused, set aside the

finding of guilt of Specification 5 of Charge II and will reassess the sentence accordingly.

## IV

■ Charge I and its two specifications relate to a conspiracy to possess and introduce onto an air base, marihuana and amphetamines. Specifications 3 and 4 of Charge II relate to wrongful sale and use of methamphetamine. The military judge properly ruled that these offenses were multiplicious for sentencing purposes, correctly calculating the maximum punishment as confinement for thirteen years, dishonorable discharge, with ancillary reduction and forfeitures. However, he committed error by failing to instruct the court members that each of these pairs of specifications was to be considered a single offense in their determination of an appropriate sentence. Air Force Manual 111–2, Section 6–31b; *United States v. Hughes*, 1 M.J. 346 (C.M.A. 1976); *United States v. Weaver*, 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970); *United States v. Marine*, 17 U.S.C.M.A. 460, 38 C.M.R. 258 (1968). In spite of this omission, we are convinced that the members were not adversely disposed toward the accused by reason of the apparent number of offenses committed by him. The adjudged sentence is far below the maximum authorized. Although, for that reason, we find no prejudice to the accused,[8] in an abundance of caution and fairness, we will include this basis for error in our reassessment of the sentence.

## V

■ The final averment of error worthy of discussion is that the convening authority erroneously did not consider trial defense counsel's response to the post trial review. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975). According to affidavits filed with the briefs of counsel, a copy of the post trial

---

7. Although the defense made no further demands for this witness prior to findings, there was no duty to do so in the light of the judge's earlier direction to the trial counsel to produce the witness.

8. *United States v. Searles*, 14 U.S.C.M.A. 643, 34 C.M.R. 423 (1964).

review was served upon the trial defense counsel on 20 January 1978, at 1900 hours. This was the 85th day after trial, the accused having commenced his confinement on the day of trial. Not receiving a response from trial defense counsel, the convening authority signed the action some time after 1930 hours on 25 January, the 90th day of confinement, in conjunction with the rule established in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Later that evening, at 2115, the base message center received a telegraphic response to the post trial review; this message was delivered to the office of the staff judge advocate the following day.

In *Goode*, the Court of Military Appeals mandated that

[A] copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings. The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review.

*United States v. Goode, supra* at 6.

There can be no dispute that the trial defense counsel had five full days to submit his comments to the review of the staff judge advocate. This is not a case in which

the convening authority, in order to avoid the consequences of the *Dunlap* requirements, took action prematurely. *United States v. Credit*, 2 M.J. 631 (A.F.C.M.R. 1976), reversed on other grounds, 4 M.J. 118 (C.M.A. 1977). The *Goode* decision treats trial defense counsel's failure to submit a response *within five days* as a waiver of any error in the review; we do so, as well. We have, however, examined his untimely response; one issue raised has been discussed in this decision and was resolved adversely to the accused; the other has been rendered moot by our setting aside Specification 5 of Charge II.

### VI

The finding of guilty of Specification 5 of Charge II is set aside and dismissed. Reassessing the sentence in the light of this action and the other errors discussed, we find appropriate only so much thereof as provides for bad conduct discharge, confinement at hard labor for 14 months, total forfeitures and reduction to airman basic. The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

EARLY, Chief Judge, ORSER and ARROWOOD, Judges, concur.