Dennis P. SOBIN, Appellant,

v.

UNITED STATES, Appellee.

No. 89–CM–714.

District of Columbia Court of Appeals.

Argued Jan. 6, 1992.
Decided May 1, 1992.

---

Mark L. Goldstone, Washington, D.C., appointed by this court, for appellant.

G. Bradley Weinsheimer, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and Carol A. Fortine, Asst. U.S. Attys., were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

A jury convicted appellant Dennis P. Sobin of keeping a disorderly house, in violation of D.C.Code § 22–2722 (1989). The trial court sentenced him to 180 days in prison and fined him $500.00. Sobin challenges his conviction on the grounds that (1) the trial court erred in refusing to grant his motion for mistrial based on a juror's bizarre behavior prior to deliberations; and (2) he was deprived of his Sixth Amendment right to a public trial by the exclusion of his two young children from the courtroom during sentencing. We find both contentions meritless, and affirm the conviction.

## I.

The managers of an office building at 1518 K Street, N.W. complained to Morals Division officers of the Metropolitan Police Department after having received reports from several building tenants about the high volume of traffic to and from a second floor suite at night. Cleaning crews and other building tenants frequently found used condoms strewn about the floors and stairwells of the building. Surveillance conducted by MPD Morals Division officers confirmed suspicions that prostitutes were using the suite as a "trick pad." [1] Typically, a scantily clad woman entered the suite accompanied by a man. The couples spent fifteen to thirty minutes together, during which time they undressed, engaged in sexual acts, dressed, and departed.

On August 25, 1988, one Holly Thompson beckoned to and approached an undercover officer, Bernard Emert, who was driving a private vehicle on Fifteenth Street, N.W., just before midnight. Emert testified that Ms. Thompson asked if he was "dating." He responded affirmatively. Their subsequent conversation established that Emert would exchange $50.00 for two sexual acts. Ms. Thompson led Emert to the second floor suite at 1518 K Street, N.W. Sobin was seated behind the desk when the couple entered. Ms. Thompson directed Emert to pay Sobin $10.00 for the use of a room. Sobin accepted the money. Emert and Ms. Thompson entered a room containing only a mattress on the floor, and a table. When Ms. Thompson began to undress, Emert announced that he was a police officer. Ms. Thompson then yelled, "Dennis, Dennis, Dennis, this man says he's the police!" Emert and Sobin conversed briefly. Emert then left the building and gave a prearranged signal to waiting police officers, who arrested appellant and Ms. Thompson.

## II.

On the second day of the trial, the judge called counsel to the bench and expressed her concern about the strange behavior of the juror seated in the fourteenth seat. Other jurors had complained to the court clerk of that juror's bizarre actions in the jury room. At the request of defense counsel, the trial court conducted a *voir dire* of the entire jury, including Juror No. 14.[2] Each of the other jurors stated that Juror No. 14's behavior would not affect his or her ability to remain impartial and decide the case. According to the jurors questioned, at no time had Juror No. 14 discussed the case with other jurors. Ultimately, Juror No. 14 was excused and replaced with an alternate.

The trial court denied Sobin's motion for mistrial, rejecting his argument that the jury was tainted by Juror No. 14's unusual behavior and alleged threats.[3] In the alternative, but inconsistently, Sobin then asked that Juror No. 14 remain on the jury, based

---

1. Sergeant McSorley testified that he and Lieutenant Jones, during the course of their investigation, conversed with Ms. Prissy Williams Godfrey on August 22, 1988. She described herself as the Office Manager of the Washington Center for Better Living, the party which leased the premises. The building manager testified that shortly after the lease was signed, he received a mailgram explaining that the Washington Center for Better Living received a research grant to conduct a study of streetwalkers and their customers in the vicinity of the office building. Ms. Godfrey invited the officers to the suite for a tour. They observed a desk and chair at the entrance, chairs and file cabinets elsewhere, and sparsely furnished rooms containing tables and mattress-like cushions. Wastebaskets throughout the suite contained used condoms and crumpled paper towels.

2. Jurors described Juror No. 14 as "unpredictable," "paranoid," and "delusional." One juror explained that in the large jury room, Juror No. 14 would speak very loudly and change seats frequently. She told various jurors that she had been a patient at St. Elizabeths Hospital, that she was a murderer, a psychiatrist, a janitor, and a nurse. Several jurors reported the following incidents: Juror No. 14 used the men's rest room without shutting the door, and that she exposed her breasts. She threatened to kill the person she suspected of drugging her. The trial judge herself observed Juror No. 14 looking back suspiciously at a male spectator during the first day of the trial.

3. Juror No. 14 indicated that she had sought medical and mental health treatment, and she described herself as an alcoholic. In its order, the trial court concluded that a history of health or alcohol problems alone would not be sufficient ground to strike a juror.

on his belief that Juror No. 14 is representative of the community, and perhaps sympathetic to Sobin's lifestyle. Sobin does not pursue this alternative argument on appeal. The trial court eventually granted the government's motion to strike Juror No. 14 from the jury panel over Sobin's objection. Because the issue of Juror No. 14's competence arose before the jury began its deliberations, and either of two alternate jurors was available to replace her, the trial court likened this situation to that brought about when a juror becomes incapacitated during trial.

▮▮▮▮    The trial court has broad discretion to grant or deny a motion for mistrial, and on appeal the trial court's decision to deny a mistrial will be reversed only where an extreme situation threatened a miscarriage of justice. *Beale v. United States,* 465 A.2d 796, 799 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *Catlett v. United States,* 545 A.2d 1202, 1213 (D.C.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989). The trial court also has broad discretion to conduct a *voir dire* of a jury, subject to the demands of fairness. *See, e.g., Khaalis v. United States,* 408 A.2d 313, 335 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). In assessing the jurors' responses, the trial judge was in a position to consider their demeanor, and the tone and pattern of their speech. *See Johnson v. United States,* 470 A.2d 756, 760 (D.C.1983). The trial judge in this case had ample opportunity to observe both Juror No. 14 and all other jurors during a *voir dire* the trial judge conducted immediately upon hearing reports of Juror No. 14's conduct. Sobin failed to articulate a reasonable basis for concluding that he was prejudiced by the behavior in question. *See Lee v. United States,* 454 A.2d 770

(D.C.1982), *cert. denied,* 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983). We perceive no basis for holding that the trial judge abused her discretion in denying a mistrial.[4]

### III.

Two of Sobin's children, ages four and six, were present in the courtroom for the sentencing phase of the proceeding. During Sobin's allocution before the imposition of the sentence, he referred to his family members. The following exchange took place:

[APPELLANT]: I want to thank the other part of my family, my two young ones ... because they have been very supportive even though they are just four and six. Your honor, they are extremely intelligent people—

[THE COURT]: May I indicate that I don't think it is appropriate for a four-year-old and six-year-old to be here for sentencing. I would ask that whoever is here please take them outside.

[APPELLANT'S COUNSEL]: Why, Your Honor?

[THE COURT]: I am asking you, please take them outside.

[APPELLANT'S COUNSEL]: Your Honor, these are his family members.

[THE COURT]: Take them outside.

[APPELLANT'S COUNSEL]: Your Honor, I object to any—

[THE COURT]: I don't care whether you object or not. I do not plan having small children in the courtroom at a time of sentencing of a parent.

[APPELLANT'S COUNSEL]: Your Honor, this is a public trial.

[THE COURT]: Right. It is not appropriate to have small children, four and six years old, in the proceedings....

---

4. We also observe that a trial judge may direct that alternate jurors "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Super.Ct.Crim.R. 24(c). Absent an abuse of discretion, we defer to the trial court's determination of whether a juror should be replaced. The question of prejudice turns substantially on the judge's appraisal of the juror's demeanor, and is therefore one about which the trial judge is especially qualified to render a sound opinion. *Leeper v. United States,* 579 A.2d 695, 698 (D.C. 1990). The judge conducted an adequate investigation through *voir dire* of each juror individually. Deliberations had not yet begun, and the court replaced the stricken juror with one of the available alternate jurors. Although Sobin objected to this course of action at trial, he does not press the issue on appeal.

Let me make one additional point [to Appellant's counsel]. I don't allow any children in my courtroom during any of the proceedings in criminal cases. It is not just Mr. Sobin's children. That is a rule that I have for all children and I think it is appropriate.

Sobin objected to the exclusion of his children on the ground that such an order violated his Sixth Amendment right to a public trial. In support of his position, Sobin points on appeal to our decision in *Kleinbart v. United States*, 388 A.2d 878 (D.C.1978). In *Kleinbart*, the doors of the courtroom were locked pursuant to the trial court's order, without notice to the parties, for approximately one hour during the first phase of Kleinbart's bifurcated jury trial. Kleinbart promptly objected to the total closure of the courtroom on Sixth Amendment grounds. The trial court offered no explanation. This court found that such a total closure, for no articulated reason, was *per se* reversible. *Id.* at 883. Only in the most exceptional circumstances, we held, upon determination of the strict and inescapable necessity for such a course of action, may the trial court totally close a courtroom. Prior to the closure, counsel must be informed in advance on the record, and counsel must be heard on the question. *Id.*

■ Without question, the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." Open court proceedings serve many desirable purposes. The quality of testimony is improved, unknown witnesses may be induced to come forward, and the public has an opportunity to observe the judicial process. *Kleinbart, supra,* 388 A.2d at 881. It discourages perjury and ensures that judges and prosecutors carry out their respective functions responsibly. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). In the context of criminal trials especially, public trials serve to restrain the abuse of judicial power. *Estes v. Texas,* 381 U.S. 532, 538–39, 85 S.Ct. 1628, 1630–31, 14 L.Ed.2d 543 (1965); *In re Oliver,* 333 U.S. 257, 270 & n. 25, 68 S.Ct.

499, 506, & n. 25, 92 L.Ed. 682 (1948); *United States v. Kobli,* 172 F.2d 919, 921 (3d Cir.1949); *Kleinbart, supra,* 388 A.2d at 881. As to the attendance of particular individuals, "an accused is at the very least entitled to have his friends, relatives and counsel present...." *In re Oliver, supra,* 333 U.S. at 272, 68 S.Ct. at 507.

■ The right to a public trial is not absolute. Limitations have been placed upon this right, based upon considerations of maintaining order, protecting witnesses or parties, and preserving confidentiality. *Kleinbart, supra,* 388 A.2d at 882; *see also United States v. Sherlock,* 865 F.2d 1069 (9th Cir.1989) (defendant's family members temporarily excluded from the courtroom during testimony of rape victim, a minor, because they were mocking and intimidating her); *Nieto v. Sullivan,* 879 F.2d 743 (10th Cir.), *cert. denied,* 493 U.S. 957, 110 S.Ct. 373, 107 L.Ed.2d 359 (1989) (trial court, after hearing, closed the courtroom during victim's testimony after victim expressed fear of retaliation from co-defendants who remained at large); *Stamicarbon N.V. v. American Cyanamid Co.,* 506 F.2d 532 (2d Cir.1974) (evidence of trade secrets justified exclusion of the public); *United States v. Kobli, supra,* 172 F.2d at 919 (in dicta, the court stated that youthful spectators could be excluded from the courtroom in cases involving sexual offenses, where evidence of scandalous or indecent matters may have a demoralizing effect on immature persons). In those instances in which the trial court has the discretion to exclude particular individuals from the courtroom, the trial judge must specify the reason that justifies exclusion. *Id.*

■ *Kleinbart* differs substantially from the instant case. At no time during Sobin's trial did the trial judge close the courtroom doors to the general public. At most, the trial judge effected a partial closing of the courtroom during sentencing by specifically excluding two members of the public, *i.e.,* two children of tender years. The exclusion of Sobin's young children in no way undermined the public policy goals identified above which are advanced by the

requirement that criminal proceedings be open. *See Reed v. United States,* 461 F.2d 1106 (8th Cir.1972) (in pro se collateral attack, defendant challenged the exclusion of his six daughters from the courtroom, without objection, during aggravated robbery trial; the trial court found no Sixth Amendment violation because the courtroom had otherwise been open to the public); *United States v. Garland,* 364 F.2d 487 (2d Cir. 1966) (because the trial court perceived no prejudice from the exclusion and defense counsel made no objection, no Sixth Amendment violation occurred when defendant's infant child was required to leave the courtroom attended by his wife), *cert. denied,* 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440 (1966).[5]

■■■ Though the trial judge in this case, when faced with Sobin's objection, did not give a lengthy articulation of her reasons for excluding the children, we are satisfied that her reasons were adequate.[6] It is apparent that the trial judge was concerned about a court proceeding which would not shield young children from unpleasant discussion of a parent's criminal activity, and would not spare them the sight of a Deputy United States Marshal taking their parent away into custody that the trial judge most likely knew was the probable outcome of the proceeding. The ages of the children, four and six, are significant to our decision. They were little more than infants, and could not reasonably have been expected to consult with or advise their father in any meaningful way. On the other hand, it was quite reasonable for the judge to be unwilling to lend court sanction to a proceeding in which small children would see their parent led away to prison after a discussion of his participation in criminal behavior.

*Affirmed.*

■■■■■■

---

5. We note that Sobin seeks to have his conviction reversed on the basis of an alleged irregularity at sentencing. By the time of sentencing, Sobin already had been tried and convicted by jury, and cannot claim that the ordered exclusion prejudiced the determination of his innocence or guilt.

6. In light of the important interests at stake, the trial judge should always provide a statement of reasons for excluding particular persons from the courtroom, especially in the face of a defense objection. When that is done, the parties will better understand the court's decision, and a record will be made for appellate review. *See Douglas v. Wainwright,* 714 F.2d 1532 (11th Cir. 1983), *aff'd on remand,* 739 F.2d 531 (1984); *United States v. Eisner,* 533 F.2d 987 (6th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *United States ex. rel. Mayberry v. Yeager,* 321 F.Supp. 199 (D.N.J.1971).