Robert M. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CM–73.

District of Columbia Court of Appeals.

Argued Sept. 21, 2004.

Decided June 21, 2007.

Patrick T. Hand, Washington, DC, appointed by the court, for appellant.

Edward A. O'Connell, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, Barbara J. Valliere and Michelle D. Jackson, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and WAGNER, Senior Judge.[*]

PER CURIAM:

Appellant, Robert M. Williams, was convicted following a bench trial of one count of misdemeanor sexual abuse (D.C.Code § 22–4106 (1981), recodified as D.C.Code § 22–3006 (2001)) and two counts of simple assault (D.C.Code § 22–504 (1981), recodified as D.C.Code § 22–404 (2001)).[1] He argues for reversal and a new trial on the ground that portions of the transcript of his trial are unavailable, thereby impairing effective prosecution of an appeal by his new counsel on appeal and meaningful review by this court. We remand the case to the trial court for proceedings consistent with this opinion, or alternatively, a new trial, if deemed to be in the interest of justice.

## I.

The following facts appear from the transcript that is available. According to the testimony of the complaining witness, Cheryl Harp, appellant is a former boyfriend who visited her on August 11, 2000, although she had asked him not to. He joined in drinking and conversing with Harp and two other visitors, Wanda Brown and Arcatia Camdon, her cousins. During a discussion about his relationship with Harp, appellant became upset and declared that if he could not have Harp,

---

[*] Judge Wagner was Chief Judge at the time this case was argued. Her status changed to Senior Judge on December 21, 2005.

1. Appellant was charged originally with seven misdemeanor offenses related to events on July 24, 2000, and nine misdemeanor offenses related to events on August 11, 2000. At trial, the government dismissed with prejudice the counts related to the July 24th incident. The trial court granted appellant's motion for judgment of acquittal of two sexual abuse counts related to August 11, 2000 on the ground that they were multiplicitous. Except as otherwise indicated above, the trial court found appellant not guilty of the remaining counts related to August 11th.

nobody would. Harp and appellant continued talking after Brown and Camdon left; appellant became upset and refused to leave. He prevented Harp from leaving by taking her keys from a deadbolt lock and prevented her from calling for help by snatching the telephone from the wall. Harp testified that appellant choked her, struck her with his open hand and hit her in the eye and mouth with his fist, causing her lip to bleed, and dragged her into the bedroom where he ripped off her clothing, choked, threatened and raped her.[2] She said that after appellant fell asleep, she escaped through a balcony door, crossed the street and called the emergency 911 number from a pay telephone. Harp then saw appellant and ran. He caught up with her, apologized, offered to fix the telephone and asked if she was going to send him to jail. When she said that he was going to jail, appellant pushed her into the woods and choked her.

Metropolitan Police Officer Thomas Jefferson testified that he was in uniform and patrolling the area of Southern Avenue in a marked police cruiser when he saw appellant with "a woman wrapped in his arms" and slowed down. Appellant let Harp go when he spotted the cruiser. Harp, who appeared to be upset, told the officer that appellant had assaulted her. Appellant, who refused the officer's request to stop at the cruiser, fled into the woods. Officer Jefferson caught appellant and handcuffed him after a struggle.

Appellant testified in his own behalf and called as witnesses: his brother, Anthony Williams; his mother, Vivian Smiley; Harp's neighbor, Kenneth Brown; and Loretta Royal, appellant's live-in, romantic interest at the time. Appellant testified that Harp was pleased to see him, and he gave her money before she went out and returned with Brown and Camdon. According to appellant, Harp and Brown were smoking crack cocaine, but he was not. He left to get more beer, which everyone shared. When the discussion turned to his relationship with Harp, he went into the bedroom. At about 6:00 a.m., Royal called appellant, but Harp would not permit her to speak with him.

Williams testified that he drove appellant to Harp's place on August 11th and that he heard her say that if appellant kept "messing" with other women, she would have him locked up for a long time. Brown testified that he lived above Harp, that he saw her and appellant around midnight on August 11th–12th, that the occasion seemed to be a happy one, and that he heard no loud music or screams emanating from Harp's apartment. Appellant's mother testified that Harp told her that appellant had a relationship with someone else and that Harp said that she was very upset and hurt about it. Royal testified that she was having a telephone conversation with appellant when she heard Harp say, "You're talking to that black b[——] on the phone .... [a]nd this time you're going to jail for a long [expletive] time." Harp invited Royal over, but she did not go outside after she arrived. Royal acknowledged her romantic relationship with appellant, and she was impeached with two prior convictions.

## II.

Appellant argues that his convictions must be reversed and a new trial granted because portions of the transcript are unavailable. He contends that the transcript is so incomplete that it prevents his new

---

**2.** Harp received eleven stitches to her lip and was treated for bruises to her arms and legs and scratches to her neck.

appellate counsel from reviewing for possible error and this court from conducting a meaningful review. The government argues that appellant has forfeited his right to complain about missing transcripts because he failed to take adequate steps to reconstruct the record.

### A.

 The Superior Court is required to record simultaneously all trial proceedings verbatim. *Cole v. United States,* 478 A.2d 277, 280–81 (D.C.1984) (citing Super. Ct.Crim. R. 36–I(a)).[3] We have held that "the reporting requirements of Rule 36–I(a) are mandatory, and exceptions will be narrowly construed." *Lucas v. United States,* 476 A.2d 1140, 1142 (D.C.1984) (citing *United States v. Workcuff,* 137 U.S.App. D.C. 263, 264–65, 422 F.2d 700, 701–02 (1970)) (footnote omitted). Rule 36–I(a)'s requirement serves two important purposes: (1) it facilitates appellate counsel's efforts to examine the record for error and thereby protect his or her client's rights; and (2) it ensures the availability of a record adequate for meaningful appellate review. *See Cole,* 478 A.2d at 280–82 (citations omitted). Nevertheless, this court has rejected a *per se* rule requiring reversal because of missing transcripts. *Lucas,* 476 A.2d at 1142; *see also McCoy v. United States,* 781 A.2d 765, 771 (D.C.2001) (citing *Cole,* 478 A.2d at 282) (noting that failure to provide certain evidence on appeal is not *per se* reversible error and affirming conviction where reconstructed photo array permit-

ted fair review). The question is whether the unavailability of transcripts prejudices appellant's right to appeal. *Lucas,* 476 A.2d at 1142. Such prejudice may occur when: (1) "it is impossible for the appellate court to determine from the record whether or not prejudicial error occurred;" or (2) "although no specific error is claimed, the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Id.* (citations omitted).

 "[A]ppellant bears the burden of presenting this court with a record sufficient to show that error occurred at trial." *Cole, supra,* 478 A.2d at 283 (citing *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982)) (other citations omitted). Under the version of D.C.App. R. 10(d) applicable to the present appeal, with special leave of court, appellant may file a "statement of proceedings and evidence from the best available means, including the recollection of counsel, in lieu of the reporter's transcript."[4] Appellee has an opportunity to file objections, and any disputes concerning the accuracy or completeness of appellant's proposed statement are to be resolved by the trial court. D.C.App. R. 10(d); *Cole,* 478 A.2d at 284. In preparing a complete record, the trial court " 'may rely on its own recollection or notes from trial, or may conduct hearings and consult with counsel and other sources.' " *McCoy, supra,* 781 A.2d at 771–72 (quoting *Cole,* 478 A.2d at 284–85). If the trial court approves the statement, upon filing, it be-

**3.** Super. Ct.Crim. R. 36–I(a) provides that "[a]ll proceedings shall be simultaneously recorded verbatim by a reporter engaged by the Court by shorthand or mechanical means or, when permitted by rule of court, by an electronic sound recording device."

**4.** References to Rule 10(d) are to the 1998 edition of the District of Columbia Court Rules, since the present appeal was filed prior to January 2, 2004 when the rule was recodified as D.C.App. R. 10(c). Although the current version and prior version of the rule differ somewhat, the differences do not alter the disposition of the issue now before the court.

comes a part of the record on appeal. D.C.App. R. 10(d). When unable to reconcile material disagreements or to certify the statement as an accurate reconstruction of the trial sufficient to permit appellate review, the trial court should set aside the judgment and order a new trial. *Cole,* 478 A.2d at 285 (citing *Cross v. District of Columbia,* 292 A.2d 794, 795 (D.C.1972) (per curiam)) (other citation omitted). Although the language of the rule is permissive, an appellant who fails to seek preparation of a substitute statement of trial proceedings "forfeit[s] any claim that he or she has been prejudiced by the absence of a transcript." *Id.* at 283–84.

## B.

■ Applying the foregoing principles to the facts presented here, we consider appellant's argument that he is entitled to a new trial because portions of his trial were not transcribed. Trial proceedings were held on nine days: March 19, 20, 21, 22, 23, 26 and 27 and April 2 and 3. The proceedings were recorded by an electronic recording sound device, portions of which were not effectively recorded, if at all, because of equipment malfunctions. The testimony of the complaining witness, Cheryl Harp, is available, but the cross-examination of Officer Jefferson, a corroborating witness called by the government, is not available. The direct testimony, portions of the cross-examination and portions of the re-direct examination of another government witness, Officer Grunwalt, who apparently collected physical evidence related to the offenses, are unavailable. Only a part of appellant's direct testimony is available, while all of his cross-examination is unavailable. Of appellant's remaining four witnesses, only the testimony of one, Kenneth Brown, is available in full. Only part of the direct examination of Williams, Smiley and Royal is available; none of their cross-examination is appar-

ently available. Ten bench conferences, the parties' closing arguments and any findings of the trial court are not available apparently.

Appellant did not follow Rule 10(d) and seek to have the trial court make efforts to reconstruct the record and approve a statement of proceedings and evidence. The government argues that appellant's failure to follow this procedure requires the court to reject his argument of prejudice and affirm his convictions. Appellant represents that he made inquiries and ascertained that the trial court had no notes and could provide no more than appears in the court jacket and that trial counsel has no recollection of the proceedings. Such informal inquiries are not a substitute for the careful procedure outlined in Rule 10. Moreover, counsel's representations concerning his efforts to secure information from the trial court and trial counsel are not a part of the record, and therefore, not properly before the court on appeal.

■ In this case, appellant does not contend that any specific substantive error occurred. Instead, he argues that his new appellate counsel was prevented from examining significant portions of the transcript to determine if error occurred and that he was prejudiced thereby. The question is whether the circumstances of this case are such that appellant can demonstrate prejudice in spite of his failure to seek a statement of proceedings and evidence under Rule 10. Prejudice can be shown, absent a specific claim of error, where "the omission in the transcript prevents new appellate counsel from reviewing a substantial or crucial portion of the trial proceedings to determine whether error occurred." *Lucas, supra,* 476 A.2d at 1142 (citing *United States v. Selva,* 559 F.2d 1303 (5th Cir.1977)) (other citation omitted). In this case, substantial portions

of the transcripts are missing. The problem is "greatly exacerbated," where, as here, appellant is represented on appeal by new counsel. *Cole, supra,* 478 A.2d at 287 (citations omitted). This forces counsel to labor not only under the disadvantage of finding errors, but also of developing a substitute statement of proceedings and evidence. *Id.* When new appellate counsel is prevented from reviewing substantial and crucial portions of the trial, reversal may be required. *Lucas,* 476 A.2d at 1142–43. Under such circumstances, we might reverse for a new trial outright. *See id.* However, given that this was a bench trial, we deem it appropriate to defer to the trial court in the first instance to determine whether additional reconstruction of the record is possible or whether, in the interest of justice, a new trial must be granted.

For the foregoing reasons, we reverse and remand to the trial court for further proceedings consistent with this opinion and for a new trial, if the interest of justice so requires.

*So ordered.*