Travis **LITTLEJOHN**, Appellant,

v.

**UNITED STATES, Appellee.**

No. 11–CO–820.

District of Columbia Court of Appeals.

Argued Jan. 15, 2013.
Decided Aug. 29, 2013.

Jenifer Wicks, Washington, DC, for appellant.

Kathryn L. Rakoczy for appellee. Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Elizabeth H. Danello, Carolyn K. Kolben, and Ann K.H. Simon, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, OBERLY, Associate Judge, and PRYOR, Senior Judge.

OBERLY, Associate Judge:

Travis Littlejohn was convicted of voluntary manslaughter while armed in connection with the stabbing death of Nadir Farooq. This court affirmed his conviction on direct appeal. *Littlejohn v. United States*, No. 05–CF–359, Mem. Op. & J., 963 A.2d 167 (D.C. Nov. 17, 2008). During the pendency of his direct appeal, Littlejohn filed a motion to vacate his conviction pursuant to D.C.Code § 23–110 (2001), alleging that trial counsel had been constitutionally ineffective for failing to object to the trial judge's order excluding Littlejohn's friends and family from the courtroom and thereby waiving his Sixth Amendment right to a public trial. The trial court denied this claim without a hearing. Because the record does not permit us to resolve the issue, we remand the case to the trial court for an evidentiary hearing to determine whether trial counsel's waiver of Littlejohn's right to a public trial constituted ineffective assistance of counsel.

## I. Background and Procedural History

While he was at a "go-go" party one night in September 2002, Nadir Farooq was fatally stabbed in the neck after a confrontation with Littlejohn. The government charged Littlejohn with Farooq's murder, relying primarily on the testimony of Farooq's sister, Nailah, who testified that she saw Littlejohn swing at Farooq and saw Farooq fall to the floor bleeding. During the course of Littlejohn's trial, hostilities arose between Littlejohn's family and friends and the family and friends of Farooq.

At 4:00 p.m. on the first day of trial, the judge took a break during Nailah Farooq's testimony. During this break, Littlejohn's counsel brought to the court's attention the conflict between the two groups. The transcript of the bench conference that ensued is seriously incomplete, consisting of many "indiscernible" statements from Littlejohn's counsel, the prosecutor, and the judge, making it difficult to determine the nature of the conflict and the proposed solutions. Apparently, there had been "a huge melee in front of the courthouse," and as the parties and the judge discussed how to respond, Littlejohn's counsel stated, "I can keep (indiscernible) and send the other group home." The judge responded: "Why can't you keep your group here, since you're going to be (indiscernible) PD–140s."

The court reporter was unable to discern much of the remaining brief discussion, but the judge soon stated that he would speak to each group. He brought in Farooq's friends and family and addressed them first:

It's been brought to my attention about the competing of the sides here, and I know it's a very stressful situation, and matters may have occurred at last court proceedings, but it's my intention and my desire that that does not repeat itself. If it does, I have no other choice but to hold people in contempt and to incarcerate them for a substantial period of time if there is any arguments or fights, either in my courtroom, in the corridor, in the lobby, or outside of this courthouse, or any other way connected to this case. To prevent that, I'm ordering [any court observers on behalf of the decedent] to be in this courtroom at 4:30 on my right side, where [the prosecutor] is standing on that side, having a seat there by 4:30 each day until you are excused.

The judge then brought in Littlejohn's friends and family, explaining that because of the "tension between both sides ... I want you all to make sure that you ... leave this courtroom, courthouse at 4 o'clock each day.... This trial will be going on from 10:30 in the morning, but you are ordered to leave this courthouse at 4 o'clock each day." The court then dismissed them for the day: "So it's 4 o'clock today, so you all can go at this time ... and we'll see you ... at 10:30 tomorrow morning."

The trial then resumed with Nailah Farooq's *direct examination and ended for* the day at "about 4:40" p.m. The trial continued over the next two days, and the jury ultimately found Littlejohn guilty of armed manslaughter.[1]

In his direct appeal, Littlejohn argued that the trial court had violated his Sixth Amendment right to a public trial when it closed the courtroom to his friends and family while a key prosecution witness was still testifying. This court affirmed his conviction, holding that, although "the right to a public trial is fundamental," it is nonetheless subject to waiver, and Little-

---

1. The record does not indicate whether the exclusion order was enforced on the additional two days of trial. At the very least, Little-john's supporters missed thirty to forty minutes of Nailah Farooq's testimony.

john's counsel waived his objection to the closure order when he "actively supported (and may even have proposed) the concept of staggering the departure times of the two groups in order to minimize the risk of a fracas." *Littlejohn,* No. 05–CF–359, Mem. Op. & J., at 1–2.

While his direct appeal was still pending, Littlejohn filed a § 23–110 motion to vacate his conviction. In that motion, he argued that his trial counsel had been ineffective in failing to object to the exclusion of his family and friends, preventing the court from considering alternative solutions to address the problems raised by the conflict between the two groups and waiving Littlejohn's right to challenge the court's closure order on appeal.[2] We pause to note that not only was Littlejohn entitled to challenge his trial counsel's ineffectiveness in a collateral attack, but that claims of ineffective assistance of counsel are in fact more appropriately brought in a separate § 23–110 motion to vacate rather than on direct appeal. A collateral attack under § 23–110 permits the trial court to hold an evidentiary hearing, if necessary, and develop a record "regarding matters relevant to the ineffectiveness claim that do not appear in the record of the case on direct appeal." *Shepard v. United States,* 533 A.2d 1278, 1280 (D.C.1987); *see also Mack v. United States,* 570 A.2d 777, 785 (D.C.1990) ("This court is in the best position to assess a claim of ineffective assistance of counsel where a separate motion

has been filed and an appropriate record has been made"); *Ramsey v. United States,* 569 A.2d 142, 146 (D.C.1990) ("Ineffective assistance of counsel is the type of serious defect which is typically not correctable on direct appeal and is therefore an appropriate ground for a collateral attack.").

At the hearing on Littlejohn's motion, the parties and the court engaged in a preliminary discussion about what issues would be explored at the hearing. In discussing the courtroom closure claim, Littlejohn's counsel explained that the issue was whether "[trial] counsel essentially waiv[ed] [Littlejohn's] right to a public and open trial without consulting with him." The prosecutor objected to a hearing on this claim for two reasons: she argued that this claim was "brought up on appeal" and "addressed by the Court of Appeals," and further, she "had absolutely no idea that defense was going to bring this up" because "it wasn't in the pleadings." On the merits, the prosecutor reasoned that "above and beyond that," defense counsel was not required to consult with his client about whether to propose staggered departures.

Littlejohn's counsel responded by arguing that the Sixth Amendment right to a public trial is a personal right that only Littlejohn himself could waive and because his trial counsel had not consulted with him about the issue, his public trial right

---

**2.** In his § 23–110 motion, Littlejohn also argued that his counsel had rendered ineffective assistance by failing to interview and call as a witness Jamal Young, who had been with Littlejohn at the go-go and who would have testified that Littlejohn was with him for an hour before the stabbing and therefore someone other than Littlejohn had stabbed Farooq. Young provided an unsworn statement and testified at the evidentiary hearing. The trial court did not find him to be a credible witness, a determination that we see no reason to second-guess. *Robinson v. United States,* 928

A.2d 717, 727 (D.C.2007). Given Young's vague and uncorroborated testimony at the hearing, Young's failure to come forward after the crime and after Littlejohn's arrest, evidence that Young and Littlejohn were good friends, and Young's impeachable conviction, the record does not support Littlejohn's claim that his counsel's failure to call Young as a witness fell below a reasonable standard of professional assistance. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

had not been properly waived and thus this court's order affirming Littlejohn's conviction on direct appeal did not address that particular claim. Littlejohn's counsel also asserted that she had indeed raised the claim in her written § 23–110 motion. She did not, however, press the specific claim she had made in her written motion that trial counsel's deficient performance was his failure to object to the exclusion of Littlejohn's friends and family.

The trial court agreed with the government and summarily denied Littlejohn's public trial claim without hearing any testimony, concluding that (1) the claim was foreclosed because the court of appeals had already determined that Littlejohn had waived the closure issue, (2) there was no apparent prejudice to Littlejohn as a result of the closure, and in any case, (3) Littlejohn had not challenged his trial counsel's failure to consult with him about the closure in his § 23–110 motion.

On appeal from the denial of his § 23–110 motion, Littlejohn argues that his counsel was ineffective both for failing to consult with him and for failing to object to the closure. Littlejohn seems to have conflated two issues in his § 23–110 motion: (1) trial counsel's act of supporting, and perhaps even proposing, a partial closure of the courtroom without consulting Littlejohn, and (2) trial counsel's failure to object to the closure of the courtroom, thereby obviating the need for the trial judge to consider alternatives that would have been less intrusive on Littlejohn's public trial right and failing to preserve the issue for appeal.

■ In affirming Littlejohn's conviction on direct appeal, we held that by failing to object to the court's closure order—and, in fact, by "actively support[ing]" the idea—Littlejohn's counsel had waived Littlejohn's right to challenge the exclusion of his supporters. *Littlejohn,* No. 05–CF–359, Mem. Op. & J. at 2. This holding, however, did not preclude Littlejohn from challenging, in a collateral attack, trial counsel's failure to object. And that is precisely the challenge that Littlejohn raised in his written § 23–110 motion; the government responded to this argument in its brief. The issue of ineffectiveness that Littlejohn *did not* raise in his written motion—but that he brought up at the hearing on his motion—was counsel's failure to consult with him before suggesting to the trial court that Littlejohn's supporters leave the courtroom early. To the extent that Littlejohn argues that the Sixth Amendment right to a public trial is a personal right that only the defendant may waive, we agree with the government and trial court that Littlejohn waived this claim when he neglected to articulate it in his § 23–110 motion and did not raise it until the hearing on his motion. We do not, however, deem waived Littlejohn's claim that his trial counsel was ineffective for failing to object to the court's closure order.[3] We turn now to that issue.

---

3. Littlejohn's counsel undoubtedly could have preserved her claim more artfully, but she did not acquiesce in the court's ruling until after arguing that this court had not addressed the issue she was raising and that she had indeed raised the claim in her written motion. "[P]arties on appeal are not limited to the precise arguments they made below in support of their claims, and even if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon." *Abdus–Price v. United States,* 873 A.2d 326, 332 n. 7 (D.C.2005) (internal quota-

tion marks omitted) (citing *Yee v. City of Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)); *see also Tindle v. United States,* 778 A.2d 1077, 1082 (D.C.2001) ("[T]he Supreme Court of the United States and this court have distinguished between 'claims' and 'arguments,' holding that although 'claims' not presented in the trial court will be forfeited (and thus subject to the plain error review standard), parties on appeal are not limited to the precise arguments they made in the trial court.") (internal quota-

## II. Discussion

In order to prevail on a claim that trial counsel was constitutionally ineffective for failing to object to the exclusion of Littlejohn's friends and family, Littlejohn must show that his "counsel's representation fell below an objective standard of reasonableness" and that "the deficient performance prejudiced his defense." *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question whether trial counsel was ineffective is intertwined with the question whether the trial court's closure order violated the Sixth Amendment right to a public trial. If there was no Sixth Amendment violation when the court ordered Littlejohn's friends and family to leave the courtroom, we could not say that trial counsel was deficient in failing to object or that the failure to object prejudiced Littlejohn, for closure could have been ordered even over an objection. If, however, the judge closed the courtroom in violation of Littlejohn's right to a public trial, counsel's waiver of that right may have amounted to ineffective assistance of counsel.

### A. The Sixth Amendment Right to a Public Trial

 The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial." U.S. CONST. amend. VI. This guarantee "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *Kleinbart v. United States,* 388 A.2d 878, 881 (D.C.1978). The requirement that criminal trials be open to the public is primarily " 'for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.' " *Tinsley v. United States,* 868 A.2d 867, 873 (D.C.2005) (quoting *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). "[A] criminal defendant's family and friends are the people most likely to be interested in, and concerned about, the defendant's treatment and fate," and their presence at trial is particularly important. *Id.; see also In re Oliver,* 333 U.S. 257, 272, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("[A]n accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."). Indeed, "if family and friends are excluded from the trial, there may be no other members of the public who are interested or concerned enough to attend at all." *Tinsley,* 868 A.2d at 873. Although a "trivial, inadvertent courtroom closure" would not offend the right to be tried in open court, so important is the guarantee that "even partial closure of a criminal proceeding," especially when it is the defendant's friends and family that are excluded, may violate the Sixth Amendment right to a public trial.[4] *Id.; see also*

tion marks omitted); *Bautista v. United States,* 10 A.3d 154, 159 (D.C.2010) ("This court may, in its discretion, entertain an argument made for the first time on appeal.").

4. We cannot say that the courtroom closure in this case was trivial. For one thing, it is not clear whether the court's exclusion order, which instructed Littlejohn's supporters to leave the courtroom thirty minutes early on each day of trial, was enforced throughout the trial. At the very least, Littlejohn's supporters were kept out of the courtroom for about thirty minutes of testimony from Farooq's sister, a key witness implicating Littlejohn in the murder. Moreover, the trial court excluded not just any members of the public, but those members "most likely to be interested in, and concerned about" Littlejohn's treatment, *Tinsley,* 868 A.2d at 873. In *United States v. Rivera,* 682 F.3d 1223 (9th Cir.2012), in which the Ninth Circuit vacated a sentence because the defendant's family was excluded from the thirty-minute sentencing proceeding, the court observed that the length of the exclusion is not dispositive; instead, there are

*Kleinbart,* 388 A.2d at 881, 883 (reversing a conviction where the courtroom was closed for "approximately one hour for no articulated reason" during a five-day trial) (emphasis omitted).

 Like most rights, of course, the right to a public trial is not absolute. " '[C]onsiderations of preserving order, protecting the parties or witnesses, and maintaining confidentiality' " may warrant closing a criminal proceeding in some manner. *Tinsley,* 868 A.2d at 874 (quoting *Kleinbart,* 388 A.2d at 882). However, " '[i]t is only under the most exceptional circumstances that limited portions of a criminal trial may be closed even partially to the public.' " *Tinsley,* 868 A.2d at 874 (quoting *Kleinbart,* 388 A.2d at 883); *see also Waller,* 467 U.S. at 45, 104 S.Ct. 2210 (holding that "[s]uch circumstances [under which "the right to an open trial may give way"] will be rare, and the balance of interests must be struck with special care"). Before a trial court may exclude members of the public from portions of a criminal proceeding, four criteria must be met: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Waller,* 467 U.S. at 48, 104 S.Ct. 2210.

Analysis of the first factor—the interest justifying closure—may incorporate the degree of closure, but the interest must "override" the defendant's Sixth Amendment right even when the courtroom is closed to some spectators and not all and even when only a portion of the proceeding is closed. As we noted in *Tinsley,* some "degrees of partial closure ... might approach a total closure in practical effect." *Tinsley,* 868 A.2d at 874. Rather than employ different standards for determining whether the interest at stake justifies closure, we have adopted the Second Circuit's en banc holding in *Ayala v. Speckard,* 131 F.3d 62 (2d Cir.1997), which instructs the trial judge to " 'recognize that open trials are strongly favored, to require persuasive evidence of serious risk to an important interest in ordering any closure, and to realize that the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest.' " [5] *Tinsley,* 868 A.2d at 874 (quoting *Ayala,* 131 F.3d at 70).

Fighting between supporters of Littlejohn and supporters of Farooq had undoubtedly become a security concern at Littlejohn's trial, and "preserving order" is

generally "two specific categories of substantial closure": where the public is excluded from a critical part of the proceeding and where the court excludes the defendant's friend or relative. *Id.* at 1231 (citing *Braun v. Powell,* 227 F.3d 908, 917 & n. 6 (7th Cir. 2000) (collecting cases)).

**5.** Some courts have required a less stringent showing in the context of partial closures. *See, e.g., Bucci v. United States,* 662 F.3d 18, 23 (1st Cir.2011) (" 'substantial' interest, rather than a 'compelling' one, will justify partial closure"); *United States v. Sherlock,* 962 F.2d 1349, 1357 (9th Cir.1992); *Nieto v. Sullivan,* 879 F.2d 743, 753 (10th Cir.1989); *Douglas v.*

*Wainwright,* 739 F.2d 531, 533 (11th Cir. 1984). We believe the Supreme Court foreclosed this approach in *Presley v. Georgia,* 558 U.S. 209, 214, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010), when it reversed a conviction because no overriding interest justified closing one stage of the criminal proceeding—the voir dire of prospective jurors. Although *Bucci* describes a "partial closure" as one that excludes some, but not all, members of the public, *see* 662 F.3d at 23, we conclude that the term applies just as readily to a closure that excludes all members of the public from a critical stage of the trial, as was the case in *Presley.*

an interest that may warrant the closure of a proceeding. *Kleinbart*, 388 A.2d at 882. We are less sure whether the decision to exclude only Littlejohn's supporters—those members of the public "most likely to be interested in, and concerned about" Littlejohn's treatment, *Tinsley*, 868 A.2d at 873—was "no broader than necessary" to protect the interest in courtroom security. *See English v. Artuz*, 164 F.3d 105, 109 (2d Cir.1998) (exclusion of defendant's family during testimony of one witness was unnecessary to protect witness from threat of harm when excluding only codefendant's family members, of whom the witness was afraid, would have sufficed). Not only might there have been a reasonable alternative to excluding members of the public, but the judge's decision to stagger departure times by ordering Littlejohn's supporters to leave the courtroom early and not Farooq's supporters may have unreasonably favored the victim's interests over the defendant's Sixth Amendment right.

The Supreme Court has recently confirmed that, with regard to the third *Waller* factor—consideration of alternatives to closing the proceeding—"trial courts are required to consider alternatives to closure even when they are not offered by the parties," and even when the closure is partial.[6] *Presley v. Georgia*, 558 U.S. 209, 214, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010). In this case, however, trial counsel seems to have supported, and may have been the one to propose, the order that Littlejohn's "group" leave the courtroom early. Under these circumstances, it is difficult to say that the judge had an obligation to reject counsel's affirmative support, and possible proposal, in favor of alternatives, such as requiring that Farooq's friends and family

be the group to leave early. Still, we are left to speculate why that alternative, among others, apparently received no consideration from any of the trial participants—defense counsel, the prosecution, or the trial judge.

Finally, *Waller* requires that the trial judge "make findings adequate to support the closure." A "lengthy articulation of [the judge's reasons] is not always necessary" and the "stated reasons are to be evaluated in light of the entire record and by reference to the scope of the closure they support." *Tinsley*, 868 A.2d at 880. The judge was clear that he was ordering Littlejohn's supporters to leave the courtroom early and requiring Farooq's supporters to remain in the courtroom until the end of the trial day in order to prevent "any arguments or fights, either in my courtroom, in the corridor, in the lobby, or outside of this courthouse, or any other way connected to this case." The question is whether the trial court's articulated reasons support the exclusion of Littlejohn's friends and family for at least thirty minutes of an important part of Littlejohn's trial, and perhaps even longer.

■ The four *Waller* criteria "require the trial judge ... to make a number of contextual, fact-specific judgments," which are committed to the judge's "informed discretion." *Tinsley*, 868 A.2d at 875. There is no abuse of discretion if the trial court's decision to exclude Littlejohn's supporters from part of the trial "had a firm factual foundation and was founded upon correct legal standards, i.e. the *Waller* criteria." *Tinsley*, 868 A.2d at 875 (citations and internal quotation marks omitted). In this case, the trial judge did not engage in

6. Although we have noted in the past that trial judges should not be required to "invent novel alternatives out of thin air" if the parties do not themselves propose alternatives for consideration, we have maintained that a trial judge should not be "absolved from considering ... obvious reasonable alternatives to exclusion of the public." *Tinsley*, 868 A.2d at 879.

an analysis of the *Waller* factors, and there was no evidentiary hearing on this claim as part of the § 23–110 proceedings. The trial record is far from illuminating, but we are skeptical that the exclusion of Littlejohn's supporters for at least thirty minutes of a key prosecution witness's testimony satisfied the *Waller* criteria.

If the exclusion of Littlejohn's supporters did not comport with the *Waller* factors, trial counsel's participation in this exclusion may have fallen "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Without the benefit of an evidentiary hearing on the issue, we cannot determine whether this decision was part of a sound trial strategy, to which we would owe deference under *Strickland*. *See id.* at 689, 104 S.Ct. 2052. For example, Littlejohn's counsel perhaps could have concluded that the disruptions in the courtroom would have had a negative effect on the jury, especially if they seemed to be caused by Littlejohn's supporters. Nevertheless, we are likewise skeptical that a sound trial strategy would involve advocating for the exclusion of the defendant's friends and family, given the particular importance of having those members of the public in attendance.

## B. Prejudice

 If Littlejohn can show that counsel's failure to object constituted deficient performance, he then will have to establish that he was prejudiced by that deficiency. The question is what standard of prejudice to apply. A violation of the right to a public trial is considered a structural defect, a class of constitutional errors that "defy analysis by 'harmless-error' standards because they affect the framework within which the trial proceeds," as opposed to trial errors, which "occur[ ] during presentation of the case to the jury" and "may be quantitatively assessed in the context of other evidence presented

in order to determine" harmlessness. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (alterations and internal quotation marks omitted). Thus, if a defendant's right to a public trial has been violated— i.e., if the four *Waller* criteria were not met—he need not show specific prejudice resulting from that violation. *Waller*, 467 U.S. at 49, 104 S.Ct. 2210 (holding that where the public trial right is violated by a courtroom closure, a defendant need not "prove specific prejudice in order to obtain relief"); *see also Kleinbart*, 388 A.2d at 882 ("Since an affirmative showing of prejudice is not necessary, any deprivation of the constitutional right is per se reversible."). The rationale underlying the presumption of prejudice in this context is that "a requirement that prejudice be shown would in most cases deprive the defendant of the public trial guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury." *Waller*, 467 U.S at 49 n. 9, 104 S.Ct. 2210 (alterations and internal quotation marks omitted); *see also Gonzalez–Lopez*, 548 U.S. at 149 n. 4, 126 S.Ct. 2557 (structural defects such as public trial right characterized by "difficulty of assessing the effect of the error"); *Kleinbart*, 388 A.2d at 882. The right to a public trial, like the right to a jury trial, is one of those "basic protection[s] whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (alteration and internal quotation marks omitted). Even in cases of partial closure, this court has held that without a finding of "strict and inescapable necessity ... [t]he closing of a trial to the public ... is per se reversible." *Kleinbart*, 388 A.2d at 883.

■ This case is not before us on direct appeal, however. This appeal is from the denial of a collateral attack alleging ineffective assistance of counsel, a claim that is traditionally analyzed under *Strickland's* familiar two-prong test. Under *Strickland*, a defendant must show actual prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In articulating the test for prejudice, however, the Supreme Court recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. To be sure, the contexts in which prejudice is presumed are few, and the Supreme Court has stressed that "only when surrounding circumstances justify a presumption of ineffectiveness" will prejudice be presumed. *United States v. Cronic*, 466 U.S. 648, 662 & n. 31, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, we do not agree with the Eleventh Circuit that *Strickland* "clear[ly]" held "that in all but three exceptional circumstances prejudice must be shown before an ineffective assistance of counsel claim merits relief." *Purvis v. Crosby*, 451 F.3d 734, 740 (11th Cir.2006). The Supreme Court's discussion of three instances in which the violation of the Sixth Amendment right to counsel is presumptively prejudicial—(1) actual or constructive denial of counsel; (2) state interference with counsel's assistance; and (3) counsel operating under a conflict of interest, *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052—is not necessarily an exclusive list of the rare occasions when prejudice may be presumed.[7] Requiring Littlejohn to prove actual prejudice as a result of trial coun-sel's waiver of his public trial right would be inconsistent with the Supreme Court's holdings that prejudice is presumed when the constitutional error is a structural defect, one that "infect[s] the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also Gonzalez–Lopez*, 548 U.S. at 148–49, 126 S.Ct. 2557; *Sullivan*, 508 U.S. at 281, 113 S.Ct. 2078; *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). If it is impossible to identify the prejudice resulting from a structural defect, it is likewise impossible to determine whether counsel's waiver of such a "basic protection," like the public trial guarantee, "had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

We are thus convinced that the rationale underlying the per se prejudicial impact of structural errors—the "precise effects are unmeasurable"—supports applying such a presumption when counsel's deficient performance causes a structural error. Other courts of appeal have held similarly. *See Johnson v. Sherry*, 586 F.3d 439, 446–47 (6th Cir.2009) ("If Johnson can establish that counsel's [failure to object to closure] was deficient, he will also be required to demonstrate that he was prejudiced by the error.... Because the right to a public trial is a structural guarantee, if the closure were unjustified or broader than necessary, prejudice would be presumed."); *Owens v. United States*, 483 F.3d 48, 64 (1st Cir.2007) ("If the failure to hold a public trial is structural error, and it is impossible to determine whether a structural error is prejudicial, we must then conclude that a defendant who is seeking to excuse a procedurally defaulted claim of

---

7. Nor are we persuaded that there is much significance in the distinction that *Waller* "came in a direct appeal presenting the pure closure issue, not in a collateral attack on the conviction presenting an ineffective assistance of counsel claim stemming from the failure to object to the closure." *Purvis*, 451 F.3d at 740.

structural error [on the basis of ineffective assistance of counsel] need not establish actual prejudice.") (citations omitted); *cf. McGurk v. Stenberg,* 163 F.3d 470, 474 (8th Cir.1998) (applying the presumption of prejudice to a *Strickland* claim involving counsel's failure to inform his client of his right to a jury trial because the denial of a jury trial is a "structural error subject to automatic reversal"); *cf. Fortune v. United States,* 59 A.3d 949, 956 (D.C.2013) (applying presumption of prejudice on plain error review where alleged error—failure to obtain valid waiver of jury trial—was structural).

Moreover, requiring Littlejohn to show actual prejudice would leave him with no remedy if his right to a public trial was violated. If the trial court closed the courtroom to members of the public in violation of *Waller,* and trial counsel unreasonably waived that right, Littlejohn's only option would be to collaterally challenge counsel's representation within a framework that requires a showing of actual prejudice in a context that the Supreme Court has recognized is virtually impossible.

### III. Conclusion

On the record before us, we are unable to resolve whether trial counsel's waiver of Littlejohn's right to have his friends and family in attendance constituted ineffective assistance of counsel. We therefore remand the case for an evidentiary hearing to determine whether counsel's public trial waiver constituted sound trial strategy given the particular importance of having a defendant's friends and family in attendance, and if not, whether the closure order satisfied the four *Waller* criteria. The trial court's review of the closure order must focus on whether the decision to exclude Littlejohn's supporters from part of the trial "had a firm factual foundation and was founded upon correct legal standards, i.e. the *Waller* criteria." *Tinsley,* 868 A.2d at 875 (citations and internal quotation

marks omitted). If it did not—if the courtroom was closed to Littlejohn's supporters in violation of his public trial right and trial counsel's waiver of that right constituted ineffective assistance of counsel—no further showing of prejudice is required and Littlejohn is entitled to a new trial.

For the foregoing reasons, the judgment of the Superior Court is vacated and the case is remanded for an evidentiary hearing in accordance with this opinion.

*So ordered.*

PRYOR, Senior Judge, dissenting:

In our review of a claim of ineffective assistance of counsel, appellant asks us to remand the case to the trial court for a second hearing regarding trial counsel's actions, and to declare a procedural approach as to prejudice to the accused, which is without precedent in this jurisdiction. In my view, the issues presented are informed by settled principles of trial litigation, as well as clear precedents regarding appellate review.

### I.

During the course of trial in this matter, there was increasingly hostile behavior between persons attending the trial on behalf of appellant and a group associated with the decedent. After a bench conference with both counsel, the judge ordered a procedure whereby appellant's supporters were required—at the end of the day—to leave the courtroom before others who were attending the trial. Appellant was seated in the courtroom when the trial judge twice announced his decision (in open court) to both groups. At the conclusion of the trial, the jury found appellant guilty of manslaughter.

After his conviction, appellant, on direct appeal, asserted an evidentiary error and

also raised a sentencing question. Additionally, he alleged that he had been denied his right to a public trial. In affirming the conviction, a panel of this court addressed the latter issue (as well as the others) in an unpublished opinion. *Littlejohn v. United States,* No. 05–CF–359, Mem. Op. & J., at 1–2, 963 A.2d 167 (D.C. Nov. 17, 2008) (*"Littlejohn I"*). Citing *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the panel reiterated the right of an accused to a public trial, but noted that not every closure of a courtroom is improper. *Littlejohn I, supra,* No. 05–CF–359, at 1. In addressing the question posed, the panel stated:

> The Supreme Court has stated that the right [to a public trial] entitles the defendant "at the very least ... to have his friends, relatives and counsel present, no matter with what he may be charged." ... Nonetheless, even "[t]he most basic rights of criminal defendants are subject to waiver," and the Supreme Court has said that a defendant waives his right to a public trial by failing to object to the exclusion of members of the public from the courtroom. While we might hesitate to find a true waiver from mere silence (as opposed to a forfeiture allowing limited appellate review for plain error), appellant's counsel actively participated with the court in crafting its solution to the serious problem posed by the presence of two hostile groups of spectators whose members previously had come to blows. Appellant not only did not object to the court's solution, it appears his counsel actively supported (and may even have proposed) the concept of staggering the departure times of the two groups in order to minimize the fracas. "We have repeatedly held that a defendant may not

take one position at trial and a contradictory position on appeal." We conclude that appellant waived his objection to the trial court's exclusion of his supporters.

*Id.* at 1–2 (internal citations omitted). Counsel for appellant in the direct appeal (also counsel in this appeal) later filed a motion alleging ineffective assistance of trial counsel.[1] In this motion, counsel argued that trial counsel performed deficiently by failing to object to the exclusion order.

At the outset of a hearing on the motion, counsel stated that she intended to show that trial counsel performed deficiently by proposing the exclusion order "without consultation with [appellant]." She indicated that she planned on calling appellant to testify about "that specific issue." The prosecution objected to this line of argument on the ground that counsel failed to include it in her written motion. The trial judge rejected the argument, because (a) he viewed the matter as resolved by the direct appeal, (b) he was "not sure how [the closure] prejudiced [appellant]," and (c) "this wasn't raised earlier." Counsel responded that she "underst[ood] the court's ruling." Then, after hearing testimony relating to a different issue, the court denied relief.

## II.

Counsel recognizes, as do we, that the record is silent as to whether appellant consented to the closure order or was ever consulted. The direct appeal panel made a similar observation. *Id.* at 1.

There are two primary reasons for requiring counsel to preserve issues for appellate review. If the trial court engages a

---

1. It is apparent from the record that this court's opinion in *Littlejohn I* was rendered before the post-trial hearing in the trial court.

question, there is likely to be a better record for review and error may be avoided. *Puckett v. United States,* 556 U.S. 129, 140, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ("[T]he [trial] court if apprised of the claim will be in a position to adjudicate the matter in the first instance, creating a factual record and facilitating appellate review."); *Johnson v. United States,* 387 A.2d 1084, 1089 (D.C.1978) (en banc) ("The reason for requiring timely exceptions . . . [is] to give the trial court the opportunity to correct errors and omissions."). Secondly, it is well understood that the rule requiring contemporaneous objection discourages counsel from taking a "second bite at the apple" on appeal should the trial court's ruling prove unfavorable. *Puckett, supra,* 556 U.S. at 140, 129 S.Ct. 1423. For these reasons, it is a long-standing principle in trial court litigation that an advocate has a duty to preserve the issues for appellate review. *Williams v. United States,* 927 A.2d 1064, 1067 (D.C. 2007) (quoting *Cole v. United States,* 478 A.2d 277, 280–81 (D.C.1984)). We appreciate the concern that may arise in the trial forum where the trial judge is not receptive to addressing a question; nonetheless, counsel has an obligation to preserve the issue in a respectful manner.[2]

When appellant's counsel raised the public-trial question at the post-conviction evidentiary hearing, the trial judge deflected the question, relying in part on this court's earlier decision. Although counsel sought to call appellant to testify whether he was consulted about the closure, she did not make any effort to proffer appellant's testimony. Nor did she make a motion to reconsider the trial judge's adverse ruling.

And while counsel did offer appellant's unsworn statement (filed with the § 23–110 motion), that statement was silent on this point.[3]

In this appeal appellant has combined prior contentions, calling them "structural errors" and reverted to what seems a direct appeal. This is done, without a showing of cause, with the request to change the burden of proving prejudice. I conclude that appellant and his counsel have had ample opportunity to establish a factual predicate to support the present appeal. Accordingly, I would not remand for the purpose of giving them a "second bite at the apple." *Puckett, supra,* 556 U.S. at 140, 129 S.Ct. 1423.

### III.

Because appellant alleges a deficiency in performance by trial counsel—which is yet to be proven—it is urged that prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), should be presumed. This approach would, of course, change the established and customary burden of proceeding. Indeed, such a change raises broader concerns. Our statute, D.C.Code § 23–110 (2001), which provides a variety of grounds for collateral relief, like other similar statutes, is intended to supplement some of the purposes served by extraordinary common law writs.

The movant must make a strong showing of deficiency and unfairness in order to prevail. It is not a coincidence that the prejudice test for plain error, and *Strickland* prejudice, are essentially the same.

---

**2.** *See* D.C. Rules of Prof'l Conduct R. 1.3 cmt. 1 (2007) ("This duty requires the lawyer to pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer, and to take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.").

**3.** Appellate counsel omitted altogether the public-trial issue from her petition for rehearing from this court's decision in the direct appeal. Instead, she simply reiterated appellant's evidentiary and sentencing arguments.

Thus, in this jurisdiction, we have made an express effort to articulate a difference between extraordinary remedies and direct appeals. *See Wu v. United States,* 798 A.2d 1083, 1089 (D.C.2002) ("Section 23–110 is not a substitute for a direct appeal."); *Head v. United States,* 489 A.2d 450, 451 (D.C.1985) ("Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure."); *Shepard v. United States,* 533 A.2d 1278, 1280 (D.C.1987). Both this court and the Supreme Court have consistently and carefully differentiated between direct appeals and collateral attacks.

I am aware that there is a difference of views on this question among some of the federal courts of appeal, *i.e., Johnson v. Sherry,* 586 F.3d 439, 447 (6th Cir.2009) (applying structural-error presumption of prejudice to an ineffective-assistance-of-counsel claim); *Owens v. United States,* 483 F.3d 48, 64–65 (1st Cir.2007) (presuming prejudice when counsel's deficient performance resulted in a structural error); *McGurk v. Stenberg,* 163 F.3d 470, 475 (8th Cir.1998) (same). But other federal appellate courts have refused to subvert the *Strickland* test by presuming prejudice. *See Hunt v. Houston,* 563 F.3d 695, 705 n. 2 (8th Cir.2009) ("[A] finding of structural error does not obviate a petitioner's obligation to show prejudice when attempting to overcome a state procedural default."); *Ward v. Hinsley,* 377 F.3d 719, 725 (7th Cir.2004) ("[T]he procedural default doctrine does not seek to distinguish claims of trial error from claims of structural error.").

On balance, our decisions in this area are premised on careful thought and decades of experience. Accordingly, I am not prepared to make the procedural changes in the area of collateral remedies which appellant urges. I would affirm.